UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>GREGORIS MARTINEZ,<br><br>                    Defendant. | 19 Cr. 690-4 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

      Gregoris Martinez was sentenced on June 25, 2021, principally to a term of 72 months' imprisonment. While imprisoned, Mr. Martinez undertook efforts to better himself, including participation in the Residential Drug Abuse Program (or "RDAP") offered by the Bureau of Prisons (the "BOP"). However, before he could complete the program, Mr. Martinez was diagnosed with an aggressive form of cancer; he was transferred to a BOP medical facility, and his focus shifted to preserving his health. Mr. Martinez now moves for compassionate release, in the form of a reduction in sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government does not oppose Mr. Martinez's motion. For the reasons set forth in the remainder of this Opinion, the Court grants Mr. Martinez's motion.

## BACKGROUND

**A.    Factual and Procedural Backgrounds**

    **1.    The Offense Conduct and the Indictment**

      During the approximate period of January 2017 through September 2019, Mr. Martinez was part of a cocaine and heroin trafficking organization (or "DTO") that operated under the name "Mike's Candyshop." (Revised

Presentence Investigation Report ("PSR") (Dkt. #169) ¶ 12). Customers would text their orders to a centralized phone number, and couriers would then deliver the narcotics orders, usually within hours of the text. (*Id.*). Mr. Martinez was a courier for the DTO throughout its existence; at times, he also packaged cocaine for distribution and handled cash proceeds. (*Id.*).

In December 2018, a customer died of a fentanyl overdose after purchasing and consuming heroin and cocaine from the organization. (PSR ¶¶ 20-21). Thereafter, the DTO changed its contact information, in part to avoid law enforcement detection, and continued to operate. (*Id.* ¶ 20). Many of the participants in the DTO were arrested in October 2019, effectively ending its operations. (*Id.* ¶ 32).

On September 25, 2019, the Government obtained a sealed indictment (the "Indictment") charging six defendants, including Mr. Martinez, with conspiracy to distribute and to possess with the intent to distribute cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Dkt. #2). Mr. Martinez was arrested on October 2, 2019, and presented before United States Magistrate Judge Kevin Nathaniel Fox; on October 7, 2019, Mr. Martinez was released on bail. (Dkt. #7, 18, 28).

### 2. The Plea and the Sentencing

Certain proceedings in this case were delayed as a result of the COVID-19 pandemic. On January 19, 2021, Mr. Martinez pleaded guilty to Count One of the Indictment pursuant to a written plea agreement with the Government; in the plea agreement, the parties stipulated to a sentencing range under the

United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 97 to 121 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment. (Dkt. #100, 111 (transcript); *see also* PSR ¶ 5 (outlining terms of plea agreement)).

Sentencing was held on June 25, 2021. (Dkt. #161 (judgment), 172 (transcript)). After hearing from the parties, the Court varied downwardly from the applicable Guidelines range, and imposed a term of 72 months' imprisonment, to be followed by a term of four years of supervised release. (Dkt. #172 at 54-55). The written judgment of conviction was entered on June 29, 2021. (Dkt. #161). Mr. Martinez did not appeal from his conviction or sentence.

**B.    The Instant Motion**

On January 22, 2024, counsel for Mr. Martinez sought a court order allowing the release of his client's medical records from the BOP. (Dkt. #264). Among other things, counsel related that (i) "Mr. Martinez fell very ill while in BOP custody and has been incommunicado since January 17, 2024"; (ii) "he has been experiencing distressing and potentially dangerous symptoms since last summer and has lost approximately 70 lbs"; and (iii) "[t]he BOP's Northeast Regional Office informed [counsel] today that Mr. Martinez is currently at an unspecified outside hospital for testing and treatment." (Dkt. #264). The Court granted counsel's motion. (Dkt. #265, 266).

One month later, on February 29, 2024, Mr. Martinez filed the instant counseled motion for compassionate release, seeking a reduction in sentence to

3

time served. (Dkt. #267). Mr. Martinez explained that he had only recently been diagnosed with B Cell non-Hodgkin lymphoma; indeed, the disease had progressed to Stage 3 or 4, "with a very large tumor in Mr. Martinez's chest enveloping his aorta and compressing his trachea and superior vena cava." As bases for the relief he sought, Mr. Martinez argued that: (i) the BOP had seriously mishandled his medical care, including failing to diagnose and/or properly care for medical issues that extended back to June 2023; (ii) Mr. Martinez had experienced serious complications during his medical treatment; (iii) he was unable to provide self-care in his prison setting; (iv) the likelihood that his cancer would return was high; (v) he had been separated from family during his treatment; (vi) his wife's employment would provide him better access to the treatment he needed; and (vii) at the time of his diagnosis, he was on the verge of completing the RDAP program and being released to his home. (*Id.*). Mr. Martinez included extensive medical records with his motion, which records were submitted to the Court under seal.

On March 28, 2024, the Government submitted a letter in opposition to Mr. Martinez's motion. (Dkt. #268). Three days later, Mr. Martinez filed a counseled reply in further support of his motion, which reply included a letter from his life partner. (Dkt. #269, 269-1; *see also* Dkt. #270 (updating the information contained in Mr. Martinez's earlier submissions)).

After reviewing the parties' submissions, the Court obtained updated medical records from the BOP,[1] and convened a telephone conference with the

---

[1] The Court has received records from the BOP covering medical treatment received

4

parties on July 29, 2024, in order to discuss Mr. Martinez's medical issues. During the conference, at which Mr. Martinez's presence was waived, the Court ordered the parties to submit a joint status letter on or before August 9, 2024. On August 9, the parties advised the Court of upcoming medical tests, the results of which were necessary for the BOP to provide a meaningful update on Mr. Martinez's condition. (Dkt. #276). The Court endorsed the letter to require a further update on or before September 6, 2024. (Dkt. #277).

Additional information about Mr. Martinez's condition was provided by the defense in a letter dated September 6, 2024, and by the Government in a letter dated October 4, 2024. (Dkt. #280, 283). The Court thereafter held a telephone conference on October 22, 2024, in which Mr. Martinez participated, to obtain further information about Mr. Martinez's medical condition and about the bases for his compassionate release motion. (*See* Dkt. #284 (scheduling order)). During the conference, defense counsel articulated three principal bases on which Mr. Martinez sought compassionate release: (i) his serious medical conditions; (ii) his lost opportunity to obtain sentencing credit because of his practical inability to complete the RDAP program; and (iii) the unusually difficult circumstances of his incarceration, which included delays in receiving necessary medical treatment and an emergency transfer to a BOP medical facility far from his family.

---

through October 2024; it will refer to these records by their "note date."

Mr. Martinez stated that he administratively exhausted his claims by filing a request with the Warden of the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), that was not responded to within 30 days. (Dkt. #267 at 4; Dkt. #267-1). The Government does not contest this point. (Dkt. #268 at 3 n.1). In a letter dated October 24, 2024, the Government advised that it no longer opposes Mr. Martinez's motion. (Dkt. #285).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order). The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

6

> A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Fernandez*, 104 F.4th 420, 426-27 (2d Cir. 2024); *United States* v. *Halvon*, 26

7

F.4th 566, 570 (2d Cir. 2022). The district court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

In Amendment 821 to the Guidelines, effective as of November 1, 2023, and later made retroactive, the Sentencing Commission amended the policy statement contained at U.S.S.G. § 1B1.13 in order to provide guidance as to what constitutes extraordinary and compelling circumstances in defendant-initiated (as distinguished from BOP-initiated) compassionate release requests. This amendment "now controls the analysis of a compassionate release motion, however initiated." *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

Among the conditions listed as potential extraordinary and compelling circumstances are the following:

> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT —
>
> \*\*\*
>
> (B) The defendant is —
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover[; or]

> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> ***
>
> (5) OTHER REASONS. — The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b).

The "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant." *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). Even if a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it still must then consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)); *accord United States* v. *Jacques*, No. 20-3276, 2022 WL 894695, at *1 (2d Cir. Mar. 28, 2022) (summary order).

9

## DISCUSSION

### A. Mr. Martinez Has Demonstrated Extraordinary and Compelling Reasons

The Court begins by echoing a point it made during the October 22, 2024 telephone conference: It is grateful that Mr. Martinez has responded well to medical treatment and that he is currently showing no signs of cancer. On that point, the Court extends its appreciation to defense counsel for calling the Court's attention to this very serious matter; to the Government for responding quickly to the Court's requests for information; and to the BOP for the medical treatment it provided to, or arranged to be provided to, Mr. Martinez.

That said, the Court agrees with the defense that the constellation of facts surrounding the emergence, diagnosis, and treatment of Mr. Martinez's very serious medical conditions amounts to extraordinary and compelling reasons warranting compassionate release.[2] To begin, the Court is not in a position to decry the medical treatment that has been provided to Mr. Martinez since his transfer to the Butner Federal Medical Center in Bahama, North Carolina ("FMC Butner"), nor does it have reason to dispute the reports from

---

[2] As suggested during the October 22, 2024 telephone conference, the Court initially believed that extraordinary and compelling reasons could include Mr. Martinez's inability to complete his RDAP program — and, in consequence, his lost opportunity for early release — because of his diagnosis and medical treatment. (*See* Dkt. #267 at 6 ("Furthermore, when he was diagnosed, Mr. Martinez was on the verge of being released. It is evident the BOP believed he no longer presented any danger to the community, because the home inspection preceding his release had already been performed.")). Ultimately, however, the Court agrees with the Government that Mr. Martinez has no entitlement to early release, and therefore that the failure to obtain such release is not itself an extraordinary and compelling circumstance. Instead, the Court has considered Mr. Martinez's near-completion of the RDAP program in its evaluation of the factors set forth in 18 U.S.C. § 3553(a).

10

that facility that a recent CT scan administered to Mr. Martinez shows no signs of cancer. However, the Court is troubled by the time it took for the BOP to diagnose the condition. In June 2023, Mr. Martinez complained of severe and recurrent headaches, vertigo, nausea, and light sensitivity. (Dkt. #267 at 4 n.3). Early on, he was diagnosed with anodyne conditions, such as food poisoning or occipital neuralgia. (Medical Records for September 29, 2023). However, by October 2023, Mr. Martinez was specifically complaining about pressure and swelling in his neck and concomitant difficulty breathing; these conditions were almost certainly caused by the tumor that was compressing both his vagal nerve and his superior vena cava. (Medical Records for January 22, 2024). A CT scan was ordered, but not performed until December 2023; a follow-up biopsy was not performed for another six weeks. (Medical Records for December 14, 2023, December 19, 2023, January 23, 2024). Somewhat surprisingly, BOP clinicians ruled out lymphoma in a clinical encounter on January 10, 2024. (Medical Records for January 10, 2024). Less than a week later, Mr. Martinez fainted and was taken to a local hospital, at which time the mass was discovered and the diagnosis of non-Hodgkin lymphoma made. (Medical Records for January 17, 2024).

The Court also pauses to note the seriousness of Mr. Martinez's medical issues. Mr. Martinez has amassed more than 1,000 pages of BOP medical records, which the Court has reviewed. Upon his diagnosis with Persistent Mediastinal B Cell Lymphoma, Mr. Martinez remained at a local hospital for chemotherapy. After Mr. Martinez's first round of chemotherapy, medical

11

professionals noted complications to the treatment protocols occasioned by: (i) an occlusion of his left subclavian vein; (ii) a "thrombus," or blood clot, in his left internal jugular vein; (iii) a "[l]arge mediastinal mass with compression of recurrent laryngeal nerves and secondary vocal cord paralysis"; and (iv) moderate pericardial effusion with early symptoms of "tamponade," or pressure on the heart from fluid buildup in the pericardial sac. (Medical Records for February 13, 2024). And when BOP officials first sought to transfer Mr. Martinez to FMC Butner, problems with the latter facility's chemotherapy hood delayed the transfer for approximately one week. (Medical Records for February 22, 2024). Even now, while ostensibly free from cancer, Mr. Martinez continues to experience medical issues, including problems with his pancreas. (Medical Records for October 15, 2024).

Over the ensuing eight months, Mr. Martinez has received extensive medical treatment at FMC Butner and, as needed, at outside facilities. But while tests presently denote him as cancer-free, and while his five-year survival rate may be good, the fact remains that Mr. Martinez's cancer has a high rate of recurrence. (Dkt. #267 at 1). The Court, in turn, remains concerned that any recurrence might be met with the same delays that characterized the initial diagnosis, and that such delays could have detrimental consequences to Mr. Martinez. By contrast, Mr. Martinez's partner works at a hospital, and can arrange for his access to oncologists at that hospital, thereby ensuring prompt screening and treatment. (*Id.* at 2). In short, while not entirely co-extensive with U.S.S.G. § 1B1.13(b)(1), the Court believes that the facts outlined here

12

and substantiated by the medical records render this case "similar in gravity" to those criteria. *See* U.S.S.G. § 1B1.13(b)(5).

Were Mr. Martinez's medical conditions not sufficient to qualify as an extraordinary and compelling circumstance — and the Court believes that they are — there is a second basis for compassionate release. At the time the Court sentenced Mr. Martinez, it believed that 72 months would be sufficient to comport with all of the purposes of sentencing. However, the Court did not foresee just how arduous, and how life-threatening, Mr. Martinez's term of imprisonment would be. After his initial requests for medical attention were marginalized, Mr. Martinez was diagnosed with a very serious form of cancer and transferred to a facility that, while ultimately beneficial for his health, was not a place his family could visit.

In several prior cases decided in the context of the COVID-19 pandemic, this Court recognized "that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.'" *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); *see also United States* v. *Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in

13

prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing."). Though those decisions were made in a different factual context and predate the amendments to U.S.S.G. § 1B1.13, the Court continues to believe that conditions of confinement that are significantly more arduous than the sentencing court contemplated at the time of sentencing can — at least when combined with medical issues analogous to those described here — constitute extraordinary and compelling reasons warranting compassionate release. *Cf.* U.S.S.G. § 1B1.13(b)(1)(D) (recognizing that incarceration during an outbreak of infectious disease or a public health emergency can amount to an extraordinary and compelling reason for defendants with "personal health risk factors"). The Court therefore proceeds to consider whether such relief is warranted in this case in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.    The Section 3553(a) Factors Support a Sentence Reduction**

Among the sentencing factors a court is directed to consider in this context are "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C). No one can seriously dispute that the offense conduct is serious. (Dkt. #268 at 6-7). Mr. Martinez engaged in drug trafficking as a livelihood for nearly three years; he distributed fentanyl-laced

heroin and cocaine even after one of the DTO's customers died as a result; and he assumed more significant duties within the organization as time went on. That said, Mr. Martinez has only one prior conviction, for driving while ability-impaired. (PSR ¶ 58). He has had a clean disciplinary record while incarcerated. He successfully completed the Focus Forward program prior to his sentencing. (*Id.* ¶ 101; Letter from Clair Schultz dated March 29, 2024). And but for his illness, Mr. Martinez would have completed the RDAP program. Taken together, these developments suggest sincere commitments on Mr. Martinez's part to himself, his sobriety, and his family, as well as a lessened chance of recidivism.

Mr. Martinez has served 33 months of the sentence imposed, and the BOP now estimates his release date (exclusive of any RDAP credit) as February 2026. The Court trusts that Mr. Martinez has been specifically deterred from criminal conduct as a result of his prosecution and sentence; conversely, the Court does not believe that allowing Mr. Martinez to be released early on these circumstances would incentivize others to engage in similar criminal conduct. Accordingly, the Court will grant Mr. Martinez's motion for compassionate release, and reduce his remaining sentence to a term of time served plus one week, to allow for the satisfaction of any administrative requirements. Further, to ensure Mr. Martinez's successful reentry into law-abiding society, the Court will also modify his conditions of supervised release to add a special condition of home confinement for the first six months of his term of supervised release.

## CONCLUSION

For the reasons stated above, the Court GRANTS Mr. Martinez's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), insofar as it reduces his sentence of imprisonment to a term of time served plus one week. Mr. Martinez's term of imprisonment will be followed by a four-year term of supervised release with the mandatory, standard, and special conditions of supervised release contained in the written judgment, with the addition of a special condition of home detention for the first six months, pursuant to which Mr. Martinez will be restricted to his residence at all times except for employment; religious services; medical appointments and emergencies; attorney visits; Court appearances; Court-ordered obligations; or other activities as preapproved by his supervising probation officer. Mr. Martinez may be monitored by a form of location monitoring selected at the discretion of the probation officer. In addition, Mr. Martinez may be required to pay all or part of the costs of participation in the location monitoring program as directed by the Court and the probation officer.

The Clerk of Court is directed to terminate the motion at docket entry 267.

SO ORDERED.

Dated:   October 25, 2024
        New York, New York

                                                      KATHERINE POLK FAILLA
                                                      United States District Judge